UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA** *ex rel.* **SUEDA WHATLEY and JOHN and JANE DOE,** *individually*,<br><br>    Plaintiff,<br><br>    v.<br><br>**EASTWICK COLLEGE,** *et al.*,<br><br>    Defendants. | Civ. No. 2:13-1226 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff/Relator Sueda Whatley filed this case against Defendants Eastwick Education, Inc., E.L.M. Eastwick Education, Inc., M. Eastwick Education, Inc., and Thomas Eastwick. Defendants Eastwick Education, Inc., E.L.M. Eastwick Education, Inc., and M. Eastwick Education, Inc. are for-profit educational institutions. The Court will refer to them collectively as "Hohokus Schools." Plaintiff, a former student of the Hohokus Schools, seeks to recover damages and penalties on behalf of the United States as a *qui tam* relator under the False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA"). She also asserts several state law claims.

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6). Plaintiff moves to file an amended complaint. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons explained below, Defendants' motion to dismiss is **GRANTED**, and Plaintiff's motion to amend is **DENIED**.

I.   BACKGROUND

Plaintiff Sueda Whatley is a former student of Hohokus Schools. Defendant Thomas Eastwick owns Hohokus Schools. The following facts are alleged in the First Amended Complaint (the "FAC").

## A. Individual Allegations Related to Plaintiff Sueda Whatley

The following represents the Court's best attempt at creating a cohesive summary of Plaintiff's lengthy, disorganized, and repetitive FAC. Plaintiff attended Hohokus Schools from August 2011 through October 2012. FAC ¶ 16, ECF No. 7. When Plaintiff applied for admission, she paid a fee of $125 to be credited against tuition of $22,350. *Id.* ¶ 184. She passed an entrance exam and then enrolled in the 18-month Bilingual Licensed Practical Nursing ("BLPN") program. *Id.* ¶ 186-88. Despite enrolling in and attending the BLPN program, Plaintiff claims she did not need it, because she did not speak Spanish. *Id.* ¶ 194. Defendants drew down federal funds to pay for her tuition and fees. *Id.* ¶ 197. For instance, her account was charged a registration fee of $100 and $2,650 for books. *Id.* ¶ 192-93. And her account was charged a lab fee of $1,250 even though she did not have a lab course during her first module. *Id.* ¶ 196.

Two of the classes Plaintiff took during the first module – "Medical Terminology" and "English" – were taught by a teacher with limited English-speaking abilities. FAC ¶ 198. Plaintiff failed a course and claims she could not review or challenge the grade on her final exam. *Id.* ¶ 200. The Director of Hohokus Schools told her that she did not belong in the BLPN program and told her that she could transfer to the 12-month Licensed Practical Nursing ("LPN") program to repeat her failed course with tuition adjustments instead of out-of-pocket costs. *Id.* ¶¶ 201-02. She agreed to transfer into the LPN program. *Id.* ¶¶ 202-03.

In late October 2011, Plaintiff began her second module. FAC ¶ 206. Defendants again drew down federal funds for her tuition and fees. *Id.* ¶ 208. Although she only took two courses during her second module, she was billed the same amount as in her first. *Id.* ¶ 208. Additionally, she was charged a second time for books even though she had already received her LPN books when she first enrolled in the BLPN program. *Id.* ¶ 209. She was also charged a second time for lab fees. *Id.* ¶ 210. She eventually received a partial refund check for $1,957 from the federal government for her second module. *Id.* ¶ 214. That check was delivered to Defendants. *Id.* ¶¶ 216, 222. Upon Defendants' request she endorsed it over to them for future costs, such as if she failed a course. *Id.*

In February 2012, Plaintiff began her third module. FAC ¶ 212. Defendants again drew down full federal loans and grants for her education. *Id.* ¶ 213. Plaintiff was told that she failed the final exam in "Fundamentals of Nursing" and thus the course, but was not permitted to challenge her grade. *Id.* ¶¶ 217-18. She claims that 50-66% of the class failed that course. *Id.* ¶ 219. Defendants told her that she had to repeat the failed course or would have to drop out of the LPN program. *Id.* ¶ 221. Defendants used the partial refund from her second module to pay for her to retake the course. *Id.* ¶¶ 221-27. Defendants also required that she pay an additional $880 in her own personal funds. *Id.* ¶ 224. Plaintiff retook the failed course, along with three new courses, during her fourth module. *Id.* ¶ 225. Defendants again drew down federal funds for her education. *Id.* ¶ 227.

Plaintiff subsequently had an accident, could not attend school or work, and went on medical leave from school. FAC ¶ 228. After her leave, Defendants told her that she had to complete four courses during her fifth module to continue in the LPN program. *Id.* ¶ 229. "Other students" told her about failure rates of "as much as 50% or more" for students enrolled in some of those courses. *Id.* ¶¶ 230-31. She complained to Defendants that "she was being set up for failure," but Defendants said she could not take a less demanding schedule due to financial aid requirements. *Id.* ¶ 231-32. On October 25, 2012, she orally notified Defendants of her decision to withdraw from the LPN program. *Id.* ¶ 233. The next day, she executed documents to confirm her withdrawal at the financial aid office and was told that no financial obligations were incurred due to her timely withdrawal. *Id.* ¶¶ 234.

Although she did not attend any classes after October 25, 2012, Defendants again drew down federal funds on her behalf. FAC ¶¶ 235-36. She received no refund or payment for the charges. *Id.* ¶ 237. In early December 2012, Plaintiff received a phone message from Defendants stating that she had not been attending classes and that finals were approaching. *Id.* ¶ 238. After she called and faxed letters confirming that she had withdrawn, Defendants sent her an attendance record consisting of sign-in sheets for various classes. *Id.* ¶ 239. Plaintiff alleges that the attendance record was altered to indicate that she had attended a course during the instant module. *Id.* ¶ 241.

Whatley alleges that although Defendants told her credits could be transferred to "any other LPN program" in New Jersey, her credits are not transferrable. FAC ¶¶ 248-49. Finally, Whatley alleges Defendants "overcharged students for coursework by charging them private tuitions while also collecting loans and grants from the federal government. *Id.* ¶¶ 248-49.

### B. General Allegations Concerning the Programs

The FAC also contains various allegations regarding Defendants' general treatment of students in their Medical Assistant ("MA"), LPN, and BPLN programs (together, the "Programs").

### i. Incentive Compensation Program

The FAC alleges that Defendants instituted a system under which admissions counselors/sales personnel ("AC/SRs") had quotas of students they had to enroll to avoid termination. FAC ¶ 84. Mr. Easwick informed AC/SRs of those quotas and then fired individuals who did not make quotas. *Id.* ¶ 85-86. Defendants allegedly fired Natalie Lopez, Vinnie Jazenbach, and Norris Brown for not meeting new nursing student quotas. *Id.* ¶ 87.

Defendants reported on recruitment in newsletters, ranked AC/SRs, and tracked student enrollment numbers. *Id.* ¶¶ 89, 92. Mr. Eastwick paid cash incentives to AC/SRs

3

that enrolled "the most students." *Id.* ¶ 90. Additionally, Defendants gave "positive incentives" to AC/SRs based upon the number of recruitments. *Id.* ¶ 91. For example, "an AC/SR who recruited a greater number of students would be publicly rewarded with cash bonuses at the . . . annual holiday party, of $300, $500, or $1000." *Id.* ¶ 91. Due to Defendants' practices, Hohokus Schools allegedly accepted unqualified students who had little chance of completing the Programs or the required third party certification tests. *Id.* ¶ 95-96. For instance, the AC/SRs accepted students who could not adequately speak or write English even though the third-party certification tests for becoming a nurse are administered only in English. *Id.* ¶¶ 92-96. The AC/SRs also accepted mentally challenged and special needs students, who had "little or no chance of completing the [P]rograms." *Id.* ¶ 97. Plaintiff thus alleges, upon information and belief, that Defendants falsely certified compliance with the prohibition on compensation incentives. *Id.* ¶ 88.

### ii. Enrollment in, and Transfer Among, the Programs

The FAC alleges that the MA and BLPN programs were used to recruit students who were not qualified for the LPN program. AC/SR's recruited students into the MA program with the explanation that it was easier to qualify for the MA program than the LPN program. FAC ¶ 37. Defendants told students that credits would transfer from the MA program to the LPN program and to other schools, which was untrue. *Id.* ¶¶ 40. Defendants promised the students that there would be adequate federal funds and federally subsidized loans from them to complete the MA and LPN programs, without out-of-pocket costs. *Id.* ¶ 43. This was untrue because students routinely failed courses and were forced to retake core courses at their own expense. *Id.* ¶¶ 43-44.

The BLPN program also had easier standards for admission than for the LPN program. FAC ¶ 47. Thus, students who desired to be LPN's were often placed in the BLPN program so that Defendants could enroll students who might not be able to pass the entrance exam for the LPN program. *Id.* ¶ 49. Additionally, Defendants enrolled English-speaking students in the BLPN program. *Id.* ¶ 51. Finally, prospective students were sometimes told that the LPN program had a waiting list and that the MA or BLPN program would allow them begin their course of study immediately. *Id.* ¶ 50, 55.

Students who did not pass the "less difficult" standardized test for admittance into the MA and BLPN programs were "often recruited" by Defendants anyway. FAC ¶¶ 103-04. And Defendants offered a special needs program to students, even if "special needs and/or disabilities doomed their chances to complete the nursing programs in which they were enrolled." *Id.* ¶ 105.

Teachers who questioned a student's ability to be enrolled in a Program were told "[t]hat's not your problem." FAC ¶ 106. Teachers were also told that the objective of the Programs was "to get as many students as possible into the [P]rograms and then to

4

retain students as long as possible," so that Hohokus Schools could continue to receive federal funds. *Id.* ¶ 107.

BLPN students took English and English as a Second Language courses even if they were native English speakers. FAC ¶ 51. BLPN students also took basic courses, which were paid for with financial aid, even though those course did not advance their medical careers. *Id.* ¶ 52. Contrary to Defendants' representations to students, the basic courses were not transferable. *Id.* ¶ 53; *see also* ¶¶ 248-49.

Plaintiff alleges that Defendants utilize the BLPN program to charge for unnecessary classes and then to charge double fees upon a student's transfer to the LPN program. English-speaking students were first enrolled in the BLPN program and then "flipped" (i.e. transferred) to the LPN program, enabling Defendants to double charge for certain fees, such as "lab fees" and "book fees." *Id.* ¶ 56, 111.

### iii. Wrongful Treatment of Students to Maximize Receipt of Federal Funds

Defendants processed FAFSA applications to maximize available federal funds for student eligibility, failed to inform students about loans they incurred, provided no "published guidelines" to explain federal financial aid to students, did not provide financial statements, and inflated program costs. FAC ¶¶ 58-73. Additionally, lab fees, book, and other fees were too high. *Id.* ¶¶ 78-81. When students withdrew or failed out before completing a Program, Defendants improperly refused to refund any of the various fees. *Id.* ¶ 83. And Defendants arranged to have students' refund checks sent to Defendants instead of directly to students so that Defendants could "keep the money." *Id.* ¶ 45.

Defendants made false and misleading statements to students that 71% of LPN and 77% of BLPN students graduated on time and that 77% of LPN graduates obtained jobs. FAC ¶ 73-74, 127. Defendants also misrepresented the time to complete programs, stating that the LPN program took 12 months. *Id.* ¶¶ 64-65.

Students were "arbitrarily failed" or "arbitrarily retained." FAC ¶¶ 119-20. Defendants changed and increased grades to retain students. *Id.* ¶ 108. Additionally, students were told that they failed final exams – and therefore entire courses – but Defendants did not allow them to review the final exams for accuracy in grading. *Id.* ¶ 128. As many as 40% to 67% of the class would fail some courses. *Id.* ¶ 130. Defendants told students that tutoring was available, but directed professors not to provide tutoring. *Id.* ¶¶ 134-36.

Plaintiff also alleges that Defendants required students to pay from their private resources to repeat courses, so that Defendants could satisfy federal guidelines requiring that a specific percentage of tuition payments be paid with private funds. FAC ¶ 126.

5

Finally, an administrator told staff that if a student who completed a Program was unlikely to pass a certification test, then that student should be discouraged from taking the test. *Id.* ¶ 113.

## II.   DISCUSSION

Defendants move to dismiss all claims against them for failure to state a claim. Plaintiff seeks leave to file a proposed supplemental amended complaint (the "SAC"). The proposed SAC adds ten class-action Plaintiffs. The additional Plaintiffs, together with Plaintiff Whatley, assert a putative class action based on several New Jersey state law claims. Defendants argue that the proposed SAC fails to state a claim. The Court will first consider the motion to dismiss and will then move to the motion to amend.

### A.  MOTION TO DISMISS

The FAC asserts the following claims:

> (1) Counts One through Five:  Violations of the FCA
> (2) Count Six:  Breach of Contract
> (3) Count Seven:  Breach of the Covenant of Good Faith and Fair Dealing
> (4) Count Eight:  Unjust Enrichment
> (5) Count Nine:  Consumer Fraud
> (6) Count Ten:  Fraud
> (7) Count Eleven:  Tort

Defendants move to dismiss the FAC for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

#### i.  Legal Standard

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of America*, 361 F.3d 217, 223-24 (3d Cir. 2004)) (internal quotations omitted). To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation. *Id.*

### ii. Plaintiff's FCA Claims

The bulk of Plaintiff's claims are rooted in Plaintiff's allegation that Defendants made misrepresentations to the Department of Education ("DOE") that wrongfully enabled it to secure student financial aid in the form of loans and grants from the federal government. When an educational institution wishes to receive federal subsidies under Title IV of the Higher Education Act of 1965, as amended ("HEA"), 20 U.S.C. § 1070 *et seq.*, it must enter into a Program Participation Agreement ("PPA") with the DOE. *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1168 (9th Cir. 2006). Under the PPA, the institution agrees to abide by numerous statutory, regulatory, and contractual requirements.

The FCA allows the government to recover losses that it incurs due to fraud. *United States v. Edu. Mgmt. Corp.*, 871 F. Supp. 2d 433, 445 (W.D. Pa. 2012). The FCA imposes liability on:

> [A]ny person who—
>
> > (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
> >
> > (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim[.]

31 U.S.C. § 3729(a)(1). The FCA provides a *qui tam* enforcement mechanism, under which a private party – the relator – may bring a lawsuit on the government's behalf against an entity to recover money the government paid on the fraudulent claims. *Edu. Mgmt. Corp.*, 871 F. Supp. 2d at 445.

In the FAC, Plaintiff alleges that Defendants knowingly caused false claims to be presented to the government and made or used false statements to get false claims paid by the government. 31 U.S.C. § 3729(a)(1)(A)-(B). Plaintiff alleges that Defendants

knowingly caused false claims to be filed by making misrepresentations to the DOE, its accrediting agencies, and students that wrongfully enabled Defendants to secure student financial aid pursuant to Title IV of the HEA.  Specifically, Plaintiff claims that Defendants knowingly violated Title IV requirements in two ways.  First, Defendants falsely certified compliance with their PPA.  Second, Defendants knowingly continued to submit students' applications for financial aid – which included certifications that the students were eligible for Title IV financial aid – even though Defendants were in violation of numerous PPA requirements.

The FAC includes five FCA counts based on alleged violations of Defendants' PPA.  In <u>Count One</u>, Plaintiff alleges that Defendants deliberately transferred students from one Program to another so that they could double charge for lab, book, and other fees.  Count One further alleges that Defendants did not refund students who failed or withdrew from the Programs even though those students had not used the lab facilities or received certain books.  <u>Count Two</u> alleges that Defendants' incentive compensation program violates the incentive compensation ban under Title IV of the HEA and 34 C.F.R. § 668.14(b)(22), which was contained within Defendants' PPA.  <u>Count Three</u> alleges that Defendants charged fees to process students' FAFSA applications.  <u>Count Four</u> alleges that Defendants falsely represented to the federal government that they had established and were maintaining a satisfactory academic progress ("SAP") policy as required by 34 C.F.R. § 668.34.  Finally, <u>Count Five</u> alleges that Defendants' overall treatment of Plaintiff violated the FCA.  Specifically, Plaintiff takes issue with Defendants' failure to provide Plaintiff with a copy of her student account ledger, employment of an English teacher with limited English-speaking abilities, failure to let Plaintiff review academic records, improper grading procedures, improper disbursement and retention of Title VI funds, inadequate classroom instruction, failure to withdraw Plaintiff and return Title IV funds consistent with regulatory requirements, and falsification of attendance records

A prima facie claim under the FCA requires a plaintiff to show that "(1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent."  *U.S. ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 305 (3d Cir. 2011) (quoting *U.S. ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 242 (3d Cir. 2004)).  A plaintiff must plead FCA claims with particularity in accordance with Rule 9(b).  *Wilkins*, 659 F.3d at 301 n.9.  Thus, a FCA complaint must contain enough specific factual context to interject precision and some measure of substantiation into the allegations of a claim of fraud.  *Seville Indus. U.S. ex rel. Staniszewski v. Washington & Jefferson Coll.*, No. 05-1098, 2008 WL 2987213, at *1 (W.D. Pa. July 31, 2008) (citing *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)).

Each of Plaintiff's five FCA counts fails to state a claim.  At the outset, the Court notes that that the FAC is largely speculative and lacks the detail necessary when

pleading allegations of fraud.  More specifically, Count One fails because Plaintiff does not explain how book and other fees were "grossly inflated" with particularity or sufficiently allege that Defendants acted with the requisite scienter in charging upfront fees or billing students who transferred students from one Program to another.  Plaintiff also fails to explain why Defendants were required to provide books to students at cost.

In Count Two, Plaintiff alleges that Defendants violated the incentive compensation ban by terminating AC/SRs for "failing to make their quotas."  FAC ¶ 87.  But the incentive compensation ban does not prohibit institutions from terminating employees based on their recruitment numbers.  *United States v. Corinthian Colleges*, 655 F.3d 984, 992 (9th Cir. 2011).  Plaintiff also alleges that Defendants "instituted quota systems" and that "an AC/SR who recruited a greater number of students would be publicly rewarded with cash bonuses at the . . . annual holiday party, of $300, $500, or $1000."  FAC ¶¶ 84-85, 91.  However, these allegations fail to meet the requirements of Rule 9(b).  *U.S. ex rel. Sobek v. Educ. Mgmt., LLC*, No. 10-131, 2013 WL 2404082, at *18 (W.D. Pa. May 31, 2013) ("To satisfy [Rule 9(b)], the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.").

In Count Three, Plaintiff alleges, upon information and belief, that Defendant charged fees "to process students' [FAFSAs], "to cover FAFSA costs" and "to cover the cost of that service."  These speculative, unsupported allegations fail to satisfy even the more lenient pleading standard under Federal Rule of Civil Procedure 8(a).  *See Iqbal*, 556 U.S. at 678.

In Count Four, Plaintiff fails to explain which SAP regulations Defendants violated or how that resulted in the improper distribution of funds.  *See Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1055 (11th Cir. 2015).  And Plaintiff provides no examples of the alleged misconduct (i.e. specific student grades changed, specific teachers pressured to change grading practices, or an instance where the school certified that a student was making SAP but the student was not).  *See United States v. Chubb Inst.*, No. 06-3562, 2010 WL 1076228, at *9 (D.N.J. Mar. 22, 2010).  Thus, Plaintiff once again fails to satisfy Rules 8(a) and 9(b).

Finally, in Count Five, Plaintiff makes numerous allegations related to her own experience with the Programs.  But Count Five lacks facts demonstrating that Defendants acted with the requisite scienter with respect to the described conduct.  *See U.S. ex rel. Pilecki-Simko v. Chubb Inst.,* 443 F. App'x 754, 761 (3d Cir. 2011) ("Appellants' SAC does not state facts supporting a reasonable inference that TCI knew, acted in reckless disregard, or deliberately ignored that its submissions were false due to their alleged violation of the incentive compensation ban, and therefore did not survive Appellees' motion to dismiss under Rule 12(b)(6)").  For example, Plaintiff challenges the failing grades she received in certain courses, but provides no details as to how or why that was done to make a false claim to the government.

The Court will thus dismiss Counts One, Two, Three, Four, and Five for failure to state a claim under Rule 12(b)(6).  Having granted Defendants' motion to dismiss as to the FAC's federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.  *Clements v. Hous. Auth. of the Borough of Princeton*, 532 F. Supp. 2d 700, 713 (D.N.J. 2007) (citing 28 U.S.C. § 1367(c)).

### B.  MOTION TO AMEND

The Court next turns to Plaintiffs' motion for leave to file the SAC.  Counts One through Four of the SAC contain amended FCA claims.  Additionally, the SAC adds 10 individuals as class-action Plaintiffs.  In Counts Five through Nine, the new Plaintiffs, together with Plaintiff Whatley, assert a putative class action based on several New Jersey state law claims.

The Court finds that the 523-paragraph[1] SAC does not cure many of the defects described above and that Plaintiffs' FCA claims still fail under Rule 12(b)(6).  The alternative grounds for this Court's jurisdiction over the SAC is the Class Action Fairness Act of 2005, codified in 28 U.S.C. § 1332(d).  However, Plaintiffs' putative class action is largely based on violations of the HEA.  Damage suits based upon state law – including consumer fraud actions – cannot be predicated (directly or indirectly) upon violations of the HEA or its regulations.  *Morgan v. Markerdowne Corp.*, 976 F. Supp. 301, 319 (D.N.J. 1997); *Thomas v. Nova Southeastern Univ., Inc.*, 2011 WL 3205298 at *3 (D.N.J. 2011) ("The Court agrees with Defendant that the HEA does not create a private right of action . . . ."), *aff'd*, 468 F. App'x 98 (3d Cir. 2012).

Further, each state law count is individually deficient.  Count Five asserts a New Jersey Consumer Fraud Act ("NJCFA") claim.  However, Plaintiff fails to sufficiently allege an unlawful practice within the meaning of the NJCFA.[2]  For instance, while Plaintiffs allege that they were overcharged for books, the FAC includes no indication that Defendants told Plaintiffs that they would receive their books at cost or that the books had no value to Plaintiffs.  *See Quigley v. Esquire Deposition Servs., LLC*, 975 A.2d 1042, 1048 (N.J. Super. Ct. App. Div. 2009).  It also does not set forth the specific books for which Plaintiffs were double-charged or indicate that Plaintiffs never received credits after being double-charged for those books.  *See* Fed. R. Civ. P. 9(b).  Nor does

---

[1] The final paragraph of the SAC is incorrectly listed as paragraph 420.

[2] "To state a claim under the NJCFA, a plaintiff must allege that the defendant engaged in an unlawful practice that caused an ascertainable loss to the plaintiff."  *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007) (citing *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462-465 (N.J. 1994).  The NJCFA defines an unlawful practice as:

> any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression[,] or omission, *in connection with the sale or advertisement of any merchandise or real estate*, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived[,] or damaged thereby.

N.J. Stat. Ann. 56:8-2 (emphasis added).

the SAC indicate that Defendants made misrepresentations to Plaintiffs about the book charges or concealed the book charges from Plaintiffs.  And while Plaintiffs allege that Defendants misrepresented job statistics, they do not ever specify how those job statistics were incorrect (i.e. how many students actually received jobs following the LPN program).  Similarly, while Plaintiffs claim that Defendants falsely stated that credits earned at Hohokus Schools were transferrable, they provide no examples of institutions that refused to accept their credits.

Moving to Plaintiffs' other state law claims, in Count Six they assert a claim for a breach of the covenant of good faith and fair dealing.  This Count fails because Plaintiffs do not sufficiently allege that they entered into a contract with Defendants.  "In the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing."  *Noye v. Hoffmann-La Roche Inc.*, 570 A.2d 12, 14 (N.J. Super. Ct. App. Div. 1990).  The Court will also dismiss Count Seven, which asserts a claim for unjust enrichment based on "unlawful and/or unconscionable provisions in applicable contracts."  Once again, Plaintiffs fail to sufficiently allege the existence of a contract.  *See VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994) ("The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.").  They also do not specifically explain which provisions in the alleged contract are unlawful or unconscionable.  Finally, in Counts Eight and Nine, Plaintiffs seek recovery for intentional tort and tort, respectively.  Counts Eight and Nine are deficient due to Plaintiffs' failure to identify which specific tort Defendants allegedly committed.  *Davis v. Two Unknown Named Agents of the F.B.I.*, No. 07-2135, 2009 WL 2049565, at *2 n.7 (D.N.J. July 8, 2009).

Thus, because the SAC fails to state a claim under Rule 12(b)(6), the Court will not allow Plaintiff to file the proposed SAC.  Further, the Court will deny Plaintiff's motion to amend.  The deficiencies noted above – particularly the lack of specificity with respect to the FCA claims – were described in Defendants' papers in support of their motion to dismiss.  Despite receiving notice of these deficiencies, Plaintiff filed a proposed SAC that failed to cure them.  Accordingly, the Court finds that further amendments would be futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962) (noting that leave to amend may be denied where the amendment would be futile).  The Court will thus deny Plaintiff's motion to amend and dismiss the FAC with prejudice.

### III.   CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is **GRANTED**.  Plaintiff's motion to amend is **DENIED**.  The FAC is **DISMISSED WITH PREJUDICE**.  An appropriate order follows.

                                              /s/ William J. Martini  
                                             **WILLIAM J. MARTINI, U.S.D.J.**

**Date: July 23, 2015**